# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SARAH WHITE,
on behalf of Z. WHITE,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:16-cv-762
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

## I. Procedural Background

Plaintiff was born in 1999 and was 16 years old at the time of the administrative law judge's ("ALJ") decision. Plaintiff's mother, Sarah White, filed an application for child's SSI benefits on plaintiff's behalf in September 2012, alleging disability due to anxiety and uncontrollable bowels. Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through a non-attorney representative, requested and was granted a *de novo* hearing before ALJ Peter J. Boylan. Plaintiff and his mother appeared and testified at the ALJ hearing. On May 11, 2015, the ALJ issued a decision denying plaintiff's application. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI as a child under the age of 18, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any impairment in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. §416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d). An impairment which meets or medically equals the severity of a set of criteria for an impairment in the listings, or which functionally equals a listed impairment, causes marked and severe functional limitations. 20 C.F.R. § 416.924(d).

In determining whether a child's impairment(s) functionally equal the listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Heath and physical-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation include (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(l)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] was born [in] 1999. Therefore, he was an adolescent on September 25, 2012, the date [the] application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The [plaintiff] has not engaged in substantial gainful activity since September 25, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: a gastrointestinal disorder; an anxiety disorder; and a somatoform disorder (20 CFR 416.924(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The [plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The [plaintiff] has not been disabled, as defined in the Social Security Act, since September 25, 2012, the date the application was filed (20 CFR 416.924(a)).

(Tr. 23-35).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. The [plaintiff] has less than marked limitation in acquiring and using information. (Tr. 29-30).

2. The [plaintiff] has less than marked limitation in attending and completing tasks. (Tr. 30-31).

3. The [plaintiff] has less than marked limitation in interacting and relating to others. (Tr. 31-32).

4. The [plaintiff] has no limitation in moving about and manipulating objects. (Tr. 32-33).

5. The [plaintiff] has less than marked limitation in the ability to care for himself. (Tr. 33-34).

6. The [plaintiff] has less than marked limitation in health and physical well-being. (Tr. 34-35).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

## D. Specific Errors

On appeal, plaintiff argues the ALJ failed to provide proper analysis of the record in determining that plaintiff did not meet Listing 112.06 for anxiety disorders and 112.07 for somatoform disorders. (Doc. 12 at 8-10). Plaintiff also argues the ALJ failed to provide proper analysis of the record in determining that plaintiff has less than marked limitation in interacting and relating with others. (*Id.* at 10-12). The Court will consider each of plaintiff's arguments in turn.

### 1. Substantial evidence supports the ALJ's determination that plaintiff's conditions do not meet or equal Listings 112.06 or 112.07.

Plaintiff argues that plaintiff's conditions meet these listings because his conditions caused marked impairment in social functioning and marked difficulty in maintaining persistence and pace. (Doc. 12 at 8-10). As to social functioning, plaintiff asserts that he spends the majority of time in his room and rarely leaves the house except for medical appointments. (*Id.* at 9). Plaintiff asserts that "the bulk of [his] interaction with others is not done in person, but rather through electronic mediums." (Doc. 18 at 2). As for persistence and pace, plaintiff asserts that his individualized education plan ("IEP") provides for frequent breaks and extended time to complete work to accommodate his anxiety. (Doc. 12 at 9). Plaintiff argues that his ability to play video games for long periods is not evidence of concentration and persistence, "but rather an escape mechanism to avoid dealing with reality." (Doc. 18 at 4).

At the time of the ALJ's decision, Listing 112.06 could be satisfied if there was medical evidence of "[r]ecurrent obsessions or compulsions which are a source of marked distress" and findings of marked impairment in age-appropriate functioning in at least two of the following areas: (1) cognitive/communicative functioning; (2) social functioning; (3) personal functioning;

or (4) maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06(A)(6), (B) (2015) (citing *id.*, § 112.02(B)(2)).

Listing 112.07 could be satisfied if there was medical evidence of "[p]ersistent nonorganic disturbance of . . . [d]igestion or elimination" and findings of marked impairment in age-appropriate functioning in at least two of the following areas: (1) cognitive/communicative functioning; (2) social functioning; (3) personal functioning; or (4) maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.07(A)(3)(g), (B) (2015) (citing *id.*, § 112.02(B)(2)).

For the purposes of these listings, "[s]ocial functioning refers to a child's capacity to form and maintain relationships with parents, other adults, and peers. Social functioning includes the ability to get along with others (e.g., family members, neighborhood friends, classmates, teachers)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(2)(b) (2015). "Strength in social functioning may be documented by such things as the child's ability to respond to and initiate social interaction with others, to sustain relationships, and to participate in group activities." *Id.* In the adolescent years, an evaluation of social functioning "must consider the capacity to form appropriate, stable, and lasting relationships." *Id.*, § 112.00(C)(4). "Markedly impoverished social contact, isolation, withdrawal, and inappropriate or bizarre behavior under the stress of socializing with others also constitute comparable findings." *Id.*

The ALJ determined that plaintiff's impairments did not meet or medically equal Listings 112.06 or 112.07 because those impairments did not result in marked impairments in cognitive, social, or personal functioning, or marked difficulties in maintaining concentration, persistence, or pace. (Tr. 23). As to social functioning, the ALJ noted that while plaintiff remains home-schooled because of his medical condition, plaintiff's mother indicated that he "gets along adequately with neighbors and similar aged peers." (Tr. 32). Plaintiff's mother also indicated

7

that plaintiff "enjoys playing online video games with friends and interacts adequately with his tutor." (*Id.*). The ALJ determined that plaintiff experienced "a significant decrease in symptoms and corresponding increase in function" when he began receiving mental health therapy and taking Prozac. (*Id.*). Specifically, the ALJ found that plaintiff "has maintained several romantic relationships" and "reported leaving the house to interact with friends," including a visit to an amusement park and trips to church. (*Id.*). Further, the ALJ noted that plaintiff's father observed in January 2015 that plaintiff was spending "more time out of the house with friends." (*Id.*).

As to concentration, persistence, and pace, the ALJ noted that plaintiff was found to maintain adequate persistence and attention/concentration during psychological evaluations. (Tr. 30). The ALJ also noted that plaintiff's most recent IEP report "described him as putting forth good effort and being persistent with tasks." (*Id.*). The ALJ acknowledged the testimony of plaintiff's mother that plaintiff has trouble finishing homework, but the ALJ found that "a review of his education history shows no delays in educational progress." (Tr. 31). Additionally, the ALJ noted the testimony of plaintiff's mother that plaintiff was able to play video games up to seven hours a day, which the ALJ found to be evidence of plaintiff's "ability to be responsive to instructions to navigate through the complexities of each level in order to achieve a specific goal." (*Id.*).

The record shows that plaintiff treated at Cincinnati Children's Hospital for generalized anxiety disorder, vomiting, and fecal soiling. (*See* Tr. 234). Gastroenterologist Scott P. Pentiuk, M.D., saw plaintiff in March 2011. Dr. Pentiuk noted that an upper endoscopy and colonoscopy in June 2010 were normal. Plaintiff reported that he continued to have daily fecal soiling. (*Id.*). Plaintiff's mother reported that plaintiff's vomiting had improved since he started a home school program, which decreased his anxiety. (Tr. 234-35). Dr. Pentiuk scheduled a barium enema and

started plaintiff on Miralax. (Tr. 236). The barium enema showed no abnormalities. (Tr. 257). Anorectal manometry[1] performed in December 2011 was normal. (Tr. 274-75). After this procedure, plaintiff was started on Ex-Lax in addition to Miralax. (Tr. 275).

In June 2012, Dr. Pentiuk noted that plaintiff was currently not taking anything for his constipation because Miralax caused his fecal soiling to worsen. (Tr. 287). Without Miralax, fecal soiling still "occurs several times a week." (Tr. 288). Plaintiff's mother reported that plaintiff's vomiting had worsened and that plaintiff was vomiting daily after dinner. Plaintiff denied feeling anxious prior to vomiting. (*Id.*). Dr. Pentiuk prescribed an increased dose of Prilosec to address plaintiff's vomiting and Ex-Lax to address plaintiff's fecal soiling. (Tr. 289).

In September 2012, Dr. Pentiuk noted that plaintiff's fecal soiling was occurring three times per week and his vomiting had decreased to two to three times per week since starting the increased dose of Prilosec. (Tr. 306). Plaintiff's mother reported that plaintiff's overall anxiety was much better. (*Id.*).

Plaintiff was homeschooled as part of the Ohio Virtual Academy. (*See* Tr. 140). In plaintiff's September 2012 IEP evaluation, Sarah Stampfle, a school psychologist with the Ohio Virtual Academy, noted that during the evaluation, plaintiff "was easily engaged with the examiner, and maintained conversation." (Tr. 146). Ms. Stampfle noted that plaintiff "was cooperative and attentive to task" during psychological testing and "he persisted with tasks and appeared to put forth good effort." (Tr. 147).

Plaintiff's primary care physician, Steven Weber, M.D., completed a questionnaire for disability purposes in December 2012. Dr. Weber reported that he had treated plaintiff for ten years and diagnosed plaintiff with constipation. (Tr. 323). Dr. Weber indicated that plaintiff

---

[1] This procedure measures how well the rectum and anal sphincter are working by assessing pressure, reflexes, and sensation of the nerves and muscles of the anus and rectum.

was taking Miralax for constipation. (Tr. 324). Dr. Weber opined that "[t]here is no way that he is disabled." (*Id.*) (underlining retained).

Consultative psychologist Andrea Johnson, Psy.D., examined plaintiff for disability purposes in December 2012. (Tr. 325-29). Dr. Johnson noted that plaintiff "gets along adequately with neighbors and similar aged peers. He has friends online and plays online games with them. He gets along adequately with his tutor." (Tr. 326). Dr. Johnson noted that plaintiff "was an easy-going and interactive boy with whom rapport was easy to establish. He was well-behaved during this evaluation and easy to engage." (Tr. 327). Dr. Johnson also noted that plaintiff "texted a girl throughout the evaluation." (*Id.*). Dr. Johnson noted plaintiff's mother's report that plaintiff was anxious, but Dr. Johnson observed no signs of anxiety during the evaluation. (*Id.*). As to plaintiff's ability to maintain attention and concentration, Dr. Johnson noted: "[Plaintiff] is able to pay attention and respond to direct questions from an adult in a one-on-one setting. He did not appear to have difficulties with inconsistent attention/concentration during the evaluation. His [mother] described no difficulties with completing tasks at home and school." (Tr. 329). As to plaintiff's ability to interact and relate to others, Dr. Johnson opined: "[Plaintiff] maintains adequate or age-appropriate peer relationships. He does get along with teachers or other non-family adults in his life." (*Id.*).

In April 2013, plaintiff was evaluated by psychologist Michael Mellon, Ph.D., of Cincinnati Children's Department of Behavior Medicine and Clinical Psychology on Dr. Pentiuk's request for consultation. (Tr. 342). Dr. Mellon noted that plaintiff reported a "longstanding issue with vomiting that seems to be precipitated by any emotional upset or anticipatory anxiety." (*Id.*). Plaintiff reported that he was currently vomiting one to two times each day and the vomiting occurred "in the evenings or any other time when he is to go out in public." (*Id.*). Plaintiff's mother reported that plaintiff "spends about 90% of his day in his

room playing video games or watching TV," coming out "to eat, use the bathroom and complete school work." (*Id.*). Plaintiff also reported an ongoing problem with fecal soiling. While he had not "soiled for the last 2 weeks, he will typically have 3-4 small soiling accidents each day." (*Id.*). Plaintiff's family reported no unusual concerns regarding attention, hyperactivity, and impulsivity. (Tr. 343). Plaintiff reported having "very few friends." (*Id.*). Dr. Mellon reported that "[r]apport was easy to establish and maintain" and plaintiff "showed a good level of attention." (*Id.*).

In May 2013, Dr. Mellon noted that in the last month, plaintiff "has only vomited about 3-4 times whereas before it was 1-2 times per week. He has had one soiling accident as he could not make it to the toilet on time." (Tr. 360). In June 2013, Dr. Mellon noted that plaintiff vomited 8 times and only had one episode of soiling. (Tr. 476). In August 2013, plaintiff's mother reported that plaintiff's vomiting was worsening and he was spending 22 hours a day in his room. (Tr. 474). In September 2013, Dr. Mellon noted that plaintiff had awakened the last three nights to vomit for about 30 minutes. (Tr. 472). Dr. Mellon referred plaintiff to the child psychiatry department for medication treatment of plaintiff's anxiety. (*Id.*).

In November 2013, plaintiff saw psychiatric nurse practitioner Erin Monroe. (Tr. 466). Ms. Monroe noted that plaintiff was currently vomiting one or two times per day because of anxiety, "especially if he has to leave the house." (Tr. 467). Plaintiff's mother reported that plaintiff had not left the house since a therapy appointment a month earlier. Ms. Monroe noted that "[t]here are no significant concerns with inattention, overactivity, or impulsivity." (*Id.*). Ms. Monroe noted that plaintiff "is shy and has very few friends. He states he has Xbox friends, but he has no friends who come visit or he doesn't visit friends due to his anxiety." (Tr. 467-68). On mental status examination, Ms. Monroe found that plaintiff's attention and concentration were "good." (Tr. 469). Ms. Monroe prescribed Zoloft for plaintiff's anxiety. (Tr. 470).

11

On January 2, 2014, Dr. Pentiuk noted that plaintiff "continues to vomit when anxious as well as have sporadic episodes in the morning." (Tr. 444). Plaintiff was started on Zoloft for anxiety, "but it made his vomiting significantly worse (7 episodes per day) so the family discontinued it." (*Id.*). Dr. Pentiuk noted that plaintiff "no longer has soiling which is a dramatic improvement from his initial presentation." (*Id.*).

On January 22, 2014, Ms. Monroe noted that plaintiff had discontinued Zoloft because it caused him to vomit "all day long." (Tr. 461). Plaintiff reported that "[h]e continues to vomit due to anxiety, but this has improved slightly, and he is no longer doing this daily. This will always happen when he has to leave the house, due to anxiety." (*Id.*). On mental status examination, plaintiff's attention and concentration were "fair, in this confined setting." (Tr. 462). Ms. Monroe started plaintiff on a low dose of Prozac to avoid side effects and also prescribed Ativan for extreme anxiety when leaving the house. (Tr. 463).

In March 2014, Ms. Monroe noted that plaintiff had not begun his medications because they were stolen from his mother's car. (Tr. 453). Ms. Monroe noted that the frequency of plaintiff's vomiting had decreased to "7 times in the last month, which is significantly less." (*Id.*). Plaintiff "was able to leave the house and spend the night with his older brother." (*Id.*).

On June 4, 2014, Ms. Monroe noted that plaintiff "vomits almost daily." (Tr. 449). Ms. Monroe noted plaintiff's report that "[h]e has been able to leave the house and do things with friends and states he is able to enjoy himself. He also met a girl at the movies last week, and now she is his girlfriend." (*Id.*). Ms. Monroe increased the dosage of plaintiff's Prozac. (Tr. 450).

On June 25, 2014, Dr. Mellon noted that plaintiff reported "he now has a girlfriend." (Tr. 566). Dr. Mellon noted that plaintiff "is now doing more things outside of the home and

enjoys it. He has been working with his dad on the landscaping work that he does." (*Id.*). Plaintiff was vomiting "intermittently." (*Id.*).

In July 2014, Ms. Monroe noted that plaintiff "has continued to spend time with friends and is able to enjoy this time." (Tr. 558). Plaintiff continued to vomit regularly, but the frequency had decreased to "once every other day, which is an improvement." (*Id.*). Plaintiff "went to King's Island and rode on 2 roller coasters, which he had never done previously." (*Id.*). Ms. Monroe increased the dosage of plaintiff's Prozac. (Tr. 559). Also in July 2014, Dr. Mellon noted that plaintiff "started going back to church" and "is feeling positive about doing so." (Tr. 555). Dr. Mellon noted that plaintiff "has been vomiting again and one day was vomiting bright red blood." (*Id.*).

In August 2014, Dr. Pentiuk noted that plaintiff continued to vomit one to three times per day, but his constipation was "much improved." (Tr. 517-18). Also in August 2014, Dr. Mellon noted that plaintiff was still vomiting. (Tr. 551). Dr. Mellon encouraged plaintiff to apply for a job at a movie theatre or restaurant. (*Id.*).

In September 2014, Dr. Mellon noted that plaintiff was "in a better mood today and seems more energetic." (Tr. 547). Plaintiff reported that he had applied to four different jobs and while "it was scary to talk to people to get a job . . . he feels good about doing so." (*Id.*). Plaintiff reported that he was still vomiting once every other day. (*Id.*). Also in September 2014, Ms. Monroe noted that plaintiff was "[s]ocial with friends, and has a team of 3 people that play competitive [video games] online." (Tr. 543). Plaintiff also reported that he had a new girlfriend. (*Id.*). Ms. Monroe noted that "[o]verall [plaintiff's] status is improving slightly." (Tr. 544).

In October 2014, Dr. Mellon noted that plaintiff had applied for another job and was "much more animated and says that he plans on getting his driver's license." (Tr. 538). In

November 2014, Dr. Mellon noted that plaintiff was "in a very good mood and much more energetic and engaging." (Tr. 534). Also in November 2014, Ms. Monroe noted that plaintiff was "much more comfortable here, feels more connected and is much more talkative." (Tr. 530). Plaintiff wanted "to continue with the Prozac, as he feels it is helpful." (*Id.*). Plaintiff reported that he was no longer having any episodes of fecal soiling. (*Id.*). Plaintiff "continue[d] to vomit, although the frequency may be decreased slightly." (*Id.*). Plaintiff was able to leave the house for therapy and medical appointments without vomiting. (*Id.*). Plaintiff reported that he had "significantly decreased" the amount of time he was playing video games and was planning to be more active. (*Id.*).

In January 2015, Ms. Monroe noted that plaintiff was talkative and was taking his Prozac regularly. (Tr. 523). Plaintiff's father stated "that he and [plaintiff's] mother notice a fairly significant improvement, and [plaintiff's] father report[ed] the frequency of [plaintiff's] vomiting has really decreased." (*Id.*). Plaintiff's father also stated that plaintiff "has gone next door and spent time with a friend there, which he has never done before." (*Id.*). Also in January 2015, Dr. Mellon noted that plaintiff was "generally doing much better with his vomiting and not having as much." (Tr. 521). Plaintiff was "spending more time out of the house with a friend next door with their shared interests in video games." (*Id.*). Plaintiff was "showing much improvement in his overall mood and energy" and was "quite enthusiastic today." (*Id.*).

Plaintiff's January 2015 IEP review noted that while plaintiff is shy, he "does have a few friends and they play video games together." (Tr. 208). Plaintiff's strengths included being "persistent with tasks and put[ting] forth good effort in his schoolwork." (*Id.*).

On this record, substantial evidence supports the ALJ's determination that plaintiff's conditions do not meet or equal Listings 112.06 or 112.07 because he does not have the required marked limitations in two areas of functioning. On appeal, plaintiff argues that his conditions

14

meet these listings because he has marked limitation in social functioning and marked difficulty in maintaining concentration, persistence, and pace. However, the record shows that substantial evidence supports the ALJ's determination that plaintiff does not have marked limitation in these two areas of functioning.

With regard to social functioning, the ALJ properly noted the December 2012 report of Dr. Johnson indicating that plaintiff "gets along adequately with neighbors and similar aged peers," "enjoys playing online video games with friends," and "interacts adequately with his tutor." (Tr. 32, 326). Based on her clinical interview and evaluation, Dr. Johnson opined that plaintiff "maintains adequate or age-appropriate peer relationships" and "get[s] along with teachers or other non-family adults in his life." (Tr. 329).

Further, the ALJ reasonably determined that plaintiff experienced "a significant decrease in symptoms and corresponding increase in function" when he began receiving mental health therapy and medication, including an ability to maintain romantic relationships and an improved ability to leave the house. (Tr. 32). The record shows that plaintiff began therapy with Dr. Mellon in April 2013 and was started on Prozac in January 2014. (Tr. 342, 463). By March 2014, Ms. Monroe noted that the frequency of plaintiff's vomiting had decreased and he was able to leave the house to spend the night with his older brother. (Tr. 453). By June 2014, plaintiff was "able to leave the house and do things with friends" and also met a girl at the movies who became his girlfriend. (Tr. 449). Plaintiff was also able to leave the house to help his dad on landscaping work. (Tr. 566). In July 2014, Ms. Monroe noted that plaintiff "continued to spend time with friends" and went to an amusement park. (Tr. 558-59). Dr. Mellon noted that plaintiff "started going back to church" in July 2014. (Tr. 555). In September 2014, plaintiff reported that he had left the house to apply for jobs. (Tr. 547). Ms. Monroe noted in September 2014 that plaintiff had a new girlfriend and was "social with friends." (Tr. 543).

As the ALJ noted, plaintiff's father stated in January 2015 that plaintiff was leaving the house to spend time with a friend. (Tr. 32, 523). Plaintiff's father also stated that he and plaintiff's mother had noticed "a fairly significant improvement" in plaintiff's condition. (Tr. 523). Dr. Mellon noted in January 2015 that plaintiff was "spending more time out of the house with a friend next door." (Tr. 521).

Substantial evidence also supports the ALJ's determination that plaintiff does not have marked difficulties in maintaining concentration, persistence, and pace. As the ALJ correctly noted, Dr. Johnson observed that plaintiff "did not appear to have difficulties with inconsistent attention/concentration during the evaluation" and Dr. Mellon observed that plaintiff "showed a good level of attention." (Tr. 30, 329, 343). Further, Dr. Johnson noted that plaintiff's mother "described no difficulties with completing tasks at home and school." (Tr. 329). Also, the ALJ accurately noted Ms. Monroe's report that plaintiff's attention and concentration were "good" in a November 2013 psychiatric evaluation. (Tr. 30, 469). Ms. Monroe further noted that plaintiff's mother did not describe any "significant concerns with inattention." (Tr. 467). Further, as the ALJ accurately noted, plaintiff's January 2015 IEP review listed plaintiff's strengths as including being "persistent with tasks and put[ting] forth good effort in his schoolwork." (Tr. 30, 208).

These records constitute substantial evidence supporting the ALJ's determination that plaintiff did not have a marked limitation in social functioning or marked difficulties in maintaining concentration, persistence, and pace for purposes of Listings 112.06 and 112.07. While plaintiff has cited other evidence in the record that could support greater limitations than those found by the ALJ, this does not change the fact that the substantial evidence described above supports the ALJ's determination. As the Sixth Circuit has explained, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). *See also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

Thus, because the ALJ reasonably determined that plaintiff does not have marked limitation in social functioning or marked difficulty in maintaining concentration, persistence, or pace, the ALJ reasonably determined that plaintiff's conditions do not meet Listings 112.06 and 112.07 because he does not have a marked limitation in two areas of functioning. Accordingly, plaintiff's assignments of error concerning these listings should be overruled.

2. **Substantial evidence supports the ALJ's determination that plaintiff has less than marked limitation in interacting and relating with others.**

For the reasons stated above in describing the ALJ's evaluation of plaintiff's social functioning, substantial evidence also supports the ALJ's determination that plaintiff has less than marked limitation in interacting and relating with others. Accordingly, this assignment of error should also be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date: 6/19/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SARAH WHITE,
on behalf of Z. WHITE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-762
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).